UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STAR INSURANCE COMPANY,

       Plaintiff,    **MEMORANDUM OF DECISION
AND ORDER**

   -against-

              Civil Action No. 05-4762
HAZARDOUS ELIMINATION CORP.,   (DRH) ((WDW)

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**APPEARANCES:**

**Hunton & Williams LLP**
Attorneys for Plaintiff
200 Park Avenue
New York, NY 10166
   and
1751 Pinnacle Drive, Suite 1700
McLean, VA 22102
By:  Robert J. Morrow, Esq.
    Syed S. Ahmad, Esq.

**Hamburger, Maxson, Yaffe, Wishod & Knauer, LLP**
Attorneys for Defendant
225 Broadhollow Road, Suite 301E
Melville, NY 11747
By:  David Norman Yaffe, Esq.
    Richard C. Hamburger, Esq.

**HURLEY, Senior District Judge:**

   This diversity case involves an insurance coverage dispute. Plaintiff Star Insurance

Company ("Star" or "Plaintiff") commenced this action seeking a declaratory judgment that it

has no obligation to provide coverage to defendant Hazardous Elimination Corp. ("HEC" or

"Defendant") under a workers' compensation and employers' liability policy with respect to an action entitled Matejkowski v. Hilton ( Supreme Court of the State of New York, Kings County Index No. 02-16881). HEC filed an answer to the complaint asserting counterclaims for a declaration of coverage and an award of damages, including costs and attorney's fees for the instant action. Presently before the Court is HEC's motion for summary judgment denying the declaratory relief sought by Star in its complaint, granting the declaratory relief requested in HEC's first counterclaim and granting HEC judgment on liability on its second and third counterclaims. For the reasons set forth below, the motion is GRANTED.

## FACTS

The following facts are taken from the parties' submission and are undisputed, unless noted otherwise.

Effective March 1, 2000, Star issued an insurance policy to HEC which provided HEC with insurance coverage for both Workers' Compensation and Employers' Liability for bodily injury (the "Policy"). The Employers' Liability portion of the Policy provides, in part :

> This employers' liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.
>
> 1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
> . . .
>
> We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers' Liability Insurance.
>
> The damages we will pay, where recovery is permitted by law, include damages:

2

> 1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;
>
> . . .
>
> This insurance does not cover:
>
> 1. Liability assumed under contract.  This exclusion does not apply to a warranty that your work will be done in a workmanlike manner.

(Ex. A to HEC's Rule 56.1 Statement.)

While the Policy was in effect, on March 18, 2000, an HEC employee, Jan Matejkowski was allegedly injured while working for HEC performing asbestos removal at a Hilton Hotel in Manhattan pursuant to a contract between HEC and Hilton.  Mr. Matejkowski filed a workers' compensation claim against HEC which HEC referred to Gallagher Bassett of New York, Inc. ("Gallagher"), Star's third party administrator.  (HEC Rule 56.1 Statement ¶¶ 2-3.)

Mr. Matejkowski also commenced an action against Hilton Hotels Corp. ("Hilton") and R.C. Dolner Inc. ( the general contractor at the work site) in the New York Supreme Court, Kings County, Index No. 16881-02 (the "Matejkowski Action").  He sought to recover damages for alleged bodily injuries and consequential damages arising out of Hilton's non-delegable duties to provide workplace safety devices to him pursuant to §240 of the New York Labor Law and the regulations promulgated thereunder.  (Id. at ¶¶ 5-6.)

Hilton, in turn, served and filed a third party action against HEC, asserting four causes of action.  The first cause of action sought judgment over against HEC, alleging that Mr. Matejkowski's were the result of HEC's negligence.  The second cause of action alleged that, pursuant to the contract dated November 2, 1998 between HEC and Hilton, HEC was obligated

to indemnify, defend and hold it harmless for any and all claims arising out of the work performed in connection therewith. The third cause of action alleged that pursuant to the contract HEC had agreed to obtain comprehensive liability insurance coverage naming Hilton as an additional insured against personal injury claims and thus it was entitled to defense and indemnification from HEC. The fourth and final cause of action sought common law indemnification. (Ex. E to HEC Rule 56.1 Statement.)

In or about late October 2002, HEC received a letter from counsel for Hilton advising it to "instruct your insurance company or legal representative to contact the undersigned forthwith in order to avoid the necessity of our seeking a default judgment against [HEC]." Alberto Sandoval, an HEC employee, faxed the letter to Star's third party administrator, Gallagher, on November 1, 2002. (HEC Rule 56.1 Statement ¶¶ 13-14.) Several weeks later, Gallagher faxed a letter, dated November 22, 2002, to the law firm of Gainey & McKenna. The fax cover sheet states "Attached defense assignment per our telephone conversation of November 22, 2002." The letter itself states that Gallagher is the third party claims administrator for Meadowbrook Insurance Group[1] and the HEC is an insured of the Group. It goes to describe how Matejkowski was injured, is collecting workers' compensation benefits and had commenced an action against Hilton, who in turn brought a third party action against HEC. The letter then recites:

> Hilton Hotels alleges that the contract with HEC agreed to provide Hilton a defense and indemnification. HEC also agreed to name Hilton Hotels as an additional insured on their insurance policy.
>
> Gallagher Bassett is handling the Workers' Compensation claim for HEC. The insurance carrier for general liability has not been identified. We question if the injury qualifies as a "severe" injury

---

[1] Star is a wholly owned subsidiary of Meadowbrook.

triggering the employers' liability coverage under section 1B of the Workers' Compensation policy.

Please note that the 3rd Party Plaintiff has made a motion for default against HEC. Kenneth Platzer, who is handling the defense of Hilton Hotels, has agreed to withdraw the motion as soon as he receives contact from your office.

Please contact Attorney Platzer and advise that your office will be handling the defense of the Workers' Compensation Employers' Liability allegations of the suit.

We will forward additional information to you as it is received. Please keep our office informed of all developments. . . .

(Ex. H to HEC Rule 56.1 Statement.) HEC was not copied on the letter.

Gainey & McKenna then filed an answer on behalf of HEC to the third party complaint, including defenses and a counterclaim. (HEC Rule 56.1 Statement ¶ 22.) By letter dated January 2, 2003 from Gainey & McKenna to Meadowbrook, the law firm sent Meadowbrook its "First Report" and "correspondence to HEC requesting all contracts and other documents relating to the incident." The firm requested that Meadowbrook "forward the original of that letter to the appropriate person at HEC and have that person contact us." The letter addressed to HEC referenced the allegation in the third party complaint that there was a contract between Hilton and HEC requiring HEC to indemnify and defend Hilton and requested a copy of the contract. It did not inform HEC that Star was reserving its rights or limiting insurance coverage in response to Hilton's claims. (Ex. J to HEC Rule 56.1 Statement.)

By letter dated March 26, 2003, Gainey & McKenna wrote to Gallagher[2] reporting on the status of the Matejkowski Action. The letter advises Gallagher that R.C. Dolner Inc. had been

_____

[2] The letter indicates that the client is "Meadowbrook Insurance Group (Hazardous Elimination Corp.")

dismissed from the action pursuant to stipulation. More importantly, it states that a copy of the contract between HEC and Hilton had been obtained and that "there are indemnification and insurance provisions in the contract between Hilton Hotel and the insured that are important to the defense of this matter and the claim by Hilton Hotel for a defense and indemnification." Continuing,

>The Contract requires HEC to maintain insurance of various types, including a commercial general liability policy in the amount of $10,000,000. The policy must include coverage for contractual liability assumed under the contract in question. The policy must also name Hilton Hotel and all related entities as additional insureds. Finally, the contract requires an endorsement stating that HEC's policy will be primary for HEC and for Hilton Hotels for all claims. Thus, the contract indicates that Hilton Hotels was to be named as an additional insured on HEC's policy and should have insurance coverage for a claim of this nature. We need to discuss this issue with you further and determine whether Hilton Hotel was added to the HEC policy as an additional insured. We must also determine whether the other insurance requirements in the contract were met.

>The contract also includes indemnification provisions. In particular, Article 20 of the contract is entitled Indemnification and Section 20.1 contains the important indemnification provision. The insured agrees to 'defend, indemnify and hold harmless Hilton Hotel from and against every claim, demand or cause of action . . . for personal injury or death arising out of or in anyway incidental to or in connection with the performance of the work hereunder." The contract further provides that the indemnification provision applies "regardless of whether or not the claim is caused in whole or in part by a party indemnified herein." . . .

>As in all construction cases involving provisions of this type, the indemnification provision must be examined closely as relates to the facts of the case in order to determine the indemnification obligations. Hilton Hotel has not pressed us for a defense and indemnification to date. We would like to discuss this issue with you to address further actions to be taken relating to the indemnification provision in the contract.

(Ex. M to HEC's Rule 56.1 Statement.)

By letter dated August 11, 2003 addressed to Gallagher[3], Gainey & McKenna wrote to report on the status of the Matejkowski Action. First, the letter addressed certain inquiries that had been raised by Gallagher. The inquiries included a request for a copy of the contract between HEC and Hilton, which according to the letter was included therewith. Also, in response to the queries whether HEC met all the insurance requirements listed in the contract with Hilton and whether Hilton has demanded that HEC assume their defense, the letter provides "We need additional information concerning whether the insured met the insurance requirements in the contract. This issue is addressed below . . . . Yes. Hilton has demanded that HEC defend and indemnify Hilton Hotels in this matter. This issue is also discussed below." With respect to insurance and indemnification issues, the letter reads in part:

> As noted above, the contract indicates that the insured will defend, indemnify and hold harmless Hilton Hotels Corporation for claims arising from the performance of the work under the contract. . . . Please advise us whether you will agree to defend and indemnify Hilton Hotel Corporation in this matter. We can then move forward with the defense of this case.

Ex. P to HEC's Rule 56.1 Statement. Again HEC was not copied on the letter.

On October 20, 2003 Gallagher sent the following e-mail to Gainey & McKenna: "We have received a letter from the claims administrator, our Melville office, for Hilton Hotels Corporation demanding per the terms of the contract agreement with Hazardous Elimination Corporation, we assume their defense and indemnification. Your analysis of August 11, 2003

---

[3] Like its earlier letter, Gainey & McKenna's August 11, 2003 letter was not copied to HEC and indicates that the client is "Meadowbrook Insurance Group (Hazardous Elimination Corp.)."

stated we should accept their tender to defend them in this action. Please advise if this has occurred and the 3d party action discontinued. Thanks!" (Ex. Q to HEC's Rule 56.1 Statement.)

Gainey & McKenna then wrote to Hilton's counsel in the Matejkowski Action: "We have been authorized by our client to accept the tender of defense by Hilton Hotels in the [Matejkowski] matter. Our client will defend and indemnify Hilton in the case." (Ex. R to HEC's Rule 56.1 Statement.) The firm then emailed Gallagher stating: "We thought we were waiting for the final approval before we agreed to pick up the defense and indemnify Hilton in the case. Based on your e-mail (below), we have advised Hilton's counsel that we will picking up their defense. Once it has been finalized, we will discontinue the 3rd party action as mentioned in our report." (Ex. S to HEC's Rule 56.1 Statement.) HEC was not copied on these emails between Gainey & McKenna and Gallagher, the August 11, 2003 letter or the letter to Hilton's counsel. ( *See id.*)[4] By a consent to change attorney dated December 3, 2003 Gainey & McKenna was substituted as attorneys of record for Hilton in the Matejkowski Action. (Ex. T to HEC's rule 56.1 Statement.)[5]

In an April 2, 2004 email, Gainey & McKenna wrote to Gallagher: "Our file contains a series of Certificates of Insurance, one of which indicates that the GL policy on Hazardous for the date in question was with Lumberman's for $1 million. Maybe that will help you for your

---

[4]The Court also notes that no correspondence advising HEC of the acceptance of Hilton's tender of defense was submitted on this motion. Nor did the parties submit any affidavit suggesting that HEC was consulted, or even apprised, in or about October 2003 of the decision to accept Hilton's tender of defense.

[5]Star has submitted the affidavit of James Goldstein, an adjuster at Gallagher, which Star contends creates an issue of fact as to whether HEC knew of and/or authorized the acceptance of Hilton's defense. However, as discussed at length *infra,* upon careful examination no such question of fact is raised.

call with Meadowbrook." (Ex. V to HEC's Rule 56.1 Statement.)  A letter status report to Gallagher followed on April 6, 2004.[6]  The letter states, among other things, "At your direction, we picked up the defense of Hilton Hotel.  As a result, the third-party action against HEC was dismissed.  We are now defending Hilton, with HEC's insurer paying the expenses and any eventual settlement." (Ex. W to HEC's Rule 56.1 Statement.)

By letter dated April 12, 2004 Gallagher in Melville, New York wrote to Gallagher in Syracuse.  The letter identifies the Melville office's client as Hilton Hotels and the Syracuse office's client as Meadowbrook Claims Service/Hazardous Elimination Corp. and seeks reimbursement of the expenses incurred by Hilton "pursuant to the contract that existed on the date of loss between the two parties."  (Ex. X to HEC Rule 56.1 Statement.)

On or about April 19, 2004,  James Goldstein of Gallagher spoke by telephone with Alberto Sandoval of HEC.   The contents of that discussion are in dispute.  According to Star, Sandoval confirmed to Goldstein that Lumberman's was HEC's general liability carrier and that Lumberman's was notified of the Matejkowski Action and Hilton's Third Party Complaint.  On the other hand,  according to HEC, Sandoval merely confirmed that Lumberman's was HEC's general liability carrier.  (See Ex. 66 to Star's Rule 56.1 Counterstatement of Facts.) No confirmatory letter of this conversation between Gallagher (or Star) and HEC was submitted on the instant motion.

By email dated April 19, 2004 Gallagher wrote to Gainey & McKenna:

> All further reports and billings should be sent to the attention of Albert Sandoval at Hazardous Elimination Corp (HEC) 195 H

---

[6]Unlike the earlier reports, the April 6, 2004 letter identifies the client as Hilton Hotels Corporation.  Like the earlier reports, it was not copied to HEC.

> Central Avenue, Farmingdale NY 11735. . . . He confirmed that
> their general liability insurance carrier is Lumberman's. He was
> aware of this claim and did receive correspondence from your firm
> back on July 14, 2003. He did not know who was handling the file
> at Lumberman's. We will send him your March 14, 2004
> statement and April 6, 2004 email report. This should clear up the
> confusion on this case. Please advise if you have any questions of
> need further assistance. Thanks for you patience in straightening
> out this matter.

(Ex. Y to HEC Rule 56.1 Statement.) HEC was not copied on the e-mail.

Thereafter, in the summer of 2004, HEC was sent bills which it in turn sent to its insurance agent asking "who is supposed to pay this bill? The insurance company of that time was Star Ins. Co." (Ex. AA to HEC's Rule 56.1 Statement.)

By letter dated August 10, 2004. Gainey sent a status report to HEC, noting that they "previously reported to Gallagher." The letter recites "At your direction, we picked up the defense of Hilton Hotel. As a result, the third-party action against HEC was dismissed. We are now defending Hilton, with HEC paying the expenses and any eventual settlement." (Ahmed Aff., Ex. 17.) The letter was copied to Meadowbrook (*See id.*)

In November 2004 HEC's insurance agent filed a claim on HEC's behalf with Lumberman's, its general liability carrier, which was thereafter denied on the ground of untimeliness as measured from the time of HEC's receipt of notification of Hilton's third party complaint in November 2002. (*See* Ex. GG to HEC's Rule 56.1 Statement.) When HEC continued to receive bills from Gainey & McKenna, HEC's general counsel forwarded the bills to Gallagher by letter dated August 4, 2005 and in a letter dated August 19, 2005 demanded Star resume the defense and indemnification of HEC. (See Exs. KK and LL to HEC Rule 56.1 Statement.)

In response, by letter dated September, 6, 2005, Star wrote "As explained below, there is no coverage for this claim under the workers' compensation and employers' liability insurance contract issued by Star Insurance to HEC." Referring to the exclusion for liability under a contract, the letter continues:

> As noted above HEC had entered into an agreement with Hilton under which HEC was required to defend and indemnify Hilton under certain circumstances. Due to this agreement, HEC has agreed to defend and indemnify Hilton in the claims brought by Mr, Matejkowski. Accordingly, any liability that HEC has incurred, or may incur, would be "Liability assumed under a contract." Based on the exclusion quoted above, the insurance contract does not provide coverage for such a claim. Therefore Star Insurance is not responsible for paying any defense costs HEC incurred in defending Hilton. Furthermore, Star Insurance is not required to indemnify HEC for any damages that it may incur in connection with indemnifying Hilton.

Ex. MM to HEC's Rule 56.1 Statement.

Shortly thereafter, Gainey sent a letter dated September 20, 2005 to Star, which letter was copied to HEC's outside counsel, the Gallagher office that represented Star (Syracuse) and the Gallagher office that represented Hilton (Melville). The letter reads in part:

> It is our understanding that we were retained by Gallagher Bassett on behalf of Star Insurance Company, the workers compensation/employers' liability insurer for HEC. We were assigned the case when Hilton filed a third party action against HEC. Eventually, Hilton filed a motion for summary judgment, which demanded a full defense and indemnification in the case based on common law and based on the contract between the parties. We were instructed to accept tender of defense and to discontinue the third party action against HEC. There were no conditions on the acceptance of the tender of defense and demand for indemnification. It was our understanding that Star would continue to defend and indemnify Hilton after the third party action against HEC was discontinued. Otherwise Star's acceptance of the tender of defense would not have any meaning if there was no

coverage behind it.

(Ex. NN, HEC Rule 56.1 Statement).

Meanwhile the Matejkowski Action was proceeding. On February 4, 2005, Matejkowski obtained summary judgment on liability against Hilton. A trial on damages was then scheduled to begin on September 21, 2006, but was thereafter adjourned. (*See* HEC's Rule 56.1 Statement at ¶ 79.)

Star then commenced this declaratory judgment action on October 21, 2005.

Since the commencement of the instant action, the following has taken place in the Matejkowski action: Hilton reactivated its third party complaint against HEC and, on November 22, 2005, was granted summary judgment on liability on the contractual indemnification claim against HEC; and Matejkowski's claim was settled for $945,000. HEC Rule 56.1 Statement at ¶¶ 90 - 94. Star, Gallagher and/or Meadowbrook paid the settlement amount.

### *Discussion*

### *I.    The Contentions of the Parties*

HEC has moved for summary judgment contending that Star's disclaimer of liability is untimely and barred as a matter of law under New York Insurance Law § 3420(d). Alternatively, Star is equitably estopped from asserting disclaimer.

Star counters that the Policy exclusion for liability assumed by the contract bars coverage, HEC waived coverage under the Policy and is estopped from seeking coverage from Star. Star further argues that there is no estoppel under section 3420(d) because it does not apply to this case and, in any event, Star's disclaimer was timely. Further, equitable estoppel does not preclude its disclaimer. Finally, it argues that the absence of discovery precludes summary

judgment in HEC's favor.

## II.    *Applicable Law and Legal Standards*

### A.  *Rule 56(f)*

Although Defendant's motion, which is labeled as a motion for summary judgment, was filed pre-discovery, both parties filed Local Rule 56.1 Statements and various affidavits and voluminous exhibits.  In opposition to the motion, Plaintiff asserts that there are questions of fact precluding summary judgment.

The Second Circuit has instructed that:

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (citations and internal quotation marks omitted).  Mere references to the lack of discovery are insufficient to satisfy this test.  *Id.*  Here, Plaintiff submitted an affidavit which only sets forth, in general terms, the discovery served by Star which it asserts seeks information that is reasonably likely to create genuine issues of facts material to HEC's motion.  According to Star, these outstanding factual issues are central to Star's argument that HEC waived and is estopped from seeking coverage under the Policy and that Star is not estopped from relying on an unambiguous exclusion.  Although not detailed in the affidavit, Star's Memorandum of Law refers to the following purported "facts sought to be obtained" through discovery: 1) when HEC notified Kemper; 2) when HEC decided to assume

Hilton's defense; and the conversation between Goldstein and Sandoval on or about April 19, 2004. Normally, the absence of any fact discovery prior to a motion for summary judgment would cause this Court to pause. However, as detailed below, these "factual issues" are not material under the relevant case law. Accordingly, the Court proceeds to a discussion of the merits of Defendant's motion.

### B. Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of

evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587.

### III. Applicability of Insurance Law §3420(D)

It is undisputed that the first written disclaimer of coverage issued by Star was its letter dated September 6, 2005. HEC contends that that disclaimer is untimely and barred as a matter of law by § 3420(d) of the New York State Insurance Law. Star counters that § 3420(d) is

inapplicable because the claims against HEC are not for death or bodily injury and, even if applicable, its disclaimer was timely.

Section 3420(d) provides in pertinent part:

> If under a liability policy . . . an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of . . . any . . . type of accident . . . it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Insur. Law § 3420(d). The purpose of the section "is to assist a consumer or claimant in obtaining an expeditious resolution to liability claims by requiring insurance companies to give prompt notification when a claim is being denied." *First Fin. Ins. Co. v. Jetco Constr. Corp.,* 1 N.Y.3d 64, 68 (2003); *accord Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.,* 27 A.D.3d 84, 90-91 (1st Dept. 2005). Thus, it is "liberally" construed by the courts. *Zappone v. Home Ins. Co.,* 80 A.D.2d 661, 662 (3d Dept. 1981), *aff'd*, 55 N.Y.2d 131 (1982).

The statutory language "deny coverage" has been interpreted to refer to denials of coverage predicated upon an exclusion in a policy which, absent the exclusion, would provide coverage. *See Zappone v. Home Ins. Co.,* 55 N.Y.2d 131, 134 (1982). In *Zappone*, the court distinguished between situations where there is no coverage within the scope of the insuring clause and situations where but for an exclusion the claim was covered. It held that the requirements of § 3420(d) do not apply if there is no coverage within the scope of the insuring clause as the purpose of the statute was not to create coverage that never existed. *Id.* at 135-36. *Accord Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 188 (2000). However, "a timely disclaimer pursuant to Insurance Law § 3420(d) is required when a claim falls within the

insurance coverage terms but is denied based on a policy exclusion." *Markevics v. Liberty Mutual Ins. Co.,* 97 N.Y.2d 646, 648-49 (2001). Further, if the section applies, it is the insurance carrier's burden to explain any delay in notifying the insured of its disclaimer or denial and a reservation of rights letter does not constitute compliance with the section. *Zappone,* 55 N.Y.2d at 135.

In this case, there is no dispute that HEC's claim comes within the insuring clause of the Policy. Star relies on the Policy exclusion for "liability assumed under a contract."

Star argues that the statute is nonetheless inapplicable because "Hilton's claims against HEC were not for 'death or bodily injury' but for economic damages related to HEC's contractual defense and indemnity obligations. As a result, Star did not disclaim liability 'for death or bodily injury' as required by section 3420(d) and that statute does not apply." Star's Mem. of Law in Opp. at p.15.

The New York Court of Appeals has not addressed this issue. There are, however, several lower court decisions which have applied § 3420(d) to bar untimely disclaimers by insurers for indemnification claims where the underlying claim was for death or bodily injury arising out of any type of accident occurring in New York.

One such case is *474431 Assoc. v. AXA Global Risks US Insurance Co.,* 18 A.D.3d 604 (2d Dept. 2005). In that case, an employee of ASL obtained a judgment against the owner of the premises where the injury occurred. The judgment was satisfied by the owner's insurer. The owner in turn commenced a third party action against ASL and obtained a judgment for common law indemnification. Thereafter an action was brought by the owner's insurer against Allcity Insurance and AXA Global Risks, both of whom insured the employer seeking a declaration that

it was entitled to reimbursement from Allcity and/or AXA. AXA argued that its policy did not cover the risk. The Second Department held that "as AXA's decision to disclaim coverage was based on a policy exclusion, AXA was required to give timely notice of the disclaimer under Insurance Law § 3420(d) . . . ." *Id.* at 605-06 (citations omitted).

Similarly, in *State v. General Star Indemnity Co.,* 299 A.D.2d 537 (2d Dept. 2002), the court applied § 3420(d) to insurer's disclaimer of liability for an indemnification claim. Therein, the State of New York had entered into a contract with GBE Contracting for the repair of various bridges. The contract provided that GBE "shall indemnify and save harmless" the state from claims arising from the work. *Id.* at 538. An employee of GBE was injured when he feel from a scaffold truck and sued the State for personal injuries. The State provided GBE and its insurer with notice of the lawsuit. The State commenced and action against GBE seeking contribution and indemnification for the employee's claim and obtained judgment against GBE. The State then commenced and action against GBE's insurer seeking a declaration that it was obligated to indemnify GBE in the State's action and hold the State harmless for any judgement entered against the State in the employee's action. The Court held that the State was entitled to judgment declaring the insurer obligated to indemnify GBE, its insured, in the underlying action as the insurer had failed to timely disclaim as required by § 3420(d). *Id.* at 538-39.

Other cases where the courts of New York have applied §3420(d) to an insurer's disclaimer of liability for indemnification (and/or contribution) claims asserted by a third party against the insurer's insured where the underlying claim against the third party was for bodily injury include *Lancer Insur. Co v. Phila. Indem. Ins. Co.*, 12 A.D.3d 641 (2d Dept. 2004); *Bovis Lend Lease LMB, Inc. v. Zurich Ins. Co.,* 9 A.D.3d 269, 269-70 (1st Dept. 2004); *Squires v.*

*Robert Marini Builders, Inc.,* 293 A.D.2d 808, 810 (3d Dept. 2002); *Herbert v. Staltac Assoc.,*

231 A.D.2d 675, 676 (2d Dept. 1996); *Brend Contracting Corp. v. United Nat'l Ins. Co.,* 13

Misc. 3d 1218(A), 2006 WL 2851621 (Sup. Ct. Kings County 2006); *Yoda, LLC v. Nat'l Union*

*Fire Ins. Co.,* 14 Misc. 3d 1201(A), 2006 WL 3615293 (Sup. Ct. New York County 2006).

Following the above cited cases, this Court holds that New York Insurance Law §

3420(d) applies to Star's disclaimers of liability for Hilton's claim for indemnification against

HEC as the underlying claim was for bodily injury arising out of an accident.[7]

The cases cited by Star in support of its argument that § 3420(d) is inapplicable are

distinguishable. In *Fairmont Funding Ltd v. Utica Mut. Ins. Co., 264 A.D.2d 581* (1st. Dept.

1999)*, §*3420(d) was held inapplicable where the underlying judgment which plaintiff sought to

have the insurer satisfy was for economic injury allegedly arising from the notarizing of a forged

power of attorney. *See id.* at 581. *Tel-Tru Manufacturing Co. v. North River Ins. Co.,* 90 A.D.2d

670 (4th Dept. 1982) involved  the predecessor to § 3420(d), i.e. section 167(8) of the Insurance

Law which, by its terms, only applied to death or bodily injury arising out of automobile

---

[7]Assuming arguendo that section 3420(d) was inapplicable to this case, HEC would still
be entitled to judgment on the ground that Star is equitably estopped from disclaiming coverage.
"[A]n insurer may be estopped from asserting a defense to coverage if (1) the insurer undertakes
to defend its insured, (2) with knowledge of a defense to coverage, (3) unreasonably delays
disclaiming coverage on the basis of that defense and if (4) the insurer's delay prejudices the
injured party who reasonably relied on the insurer." *Mount Vernon Fire Ins. Co. v. J.J.C. Stucco
& Carpentry Corp.,* 1997 WL 177864 at *2 (E.D.N.Y. 1997). As discussed in the text of this
opinion, the first three requirements have been met.  Prejudice to the insured HEC is present
because Star undertook defense of the action, without any reservation of rights, thereby depriving
HEC of control of the defense the action. *Cf. Bluestein & Sander v. Chic. Ins. Co.,* 276 F.3d
119, 122-23 (2d Cir. 2002)*; Gen. Acc. Ins. Co. v. Metro. Steel Indus., Inc.,* 9 A.D.3d 254 (1st
Dept. 2004). Indeed, the prejudice was amplified in this case because, by unilaterally accepting
Hilton's tender of defense, Star "imposed a posture and strategy on the underlying litigation that
[HEC could not] alter." *Id.* at 254-55.

accidents.  In *Tel-Tru* the plaintiff, a thermometer manufacturer which had been sued by a customer for losses allegedly incurred as a result of defects in the thermometers which it used as a component in another product, sought a declaration of coverage against its insurers. In *Sirignano v. Chic. Ins. Co.,* 192 F. Supp.2d 199 (S.D.N.Y. 2002), §3420(d) was held inapplicable to an attorney's claim for indemnification of a legal malpractice claim. Therein, the claim underlying the legal malpractice claim was for medical malpractice and not one arising out of an accident.  Finally, Star cites to a distinguishable case, *Adams v. Chic. Ins. Co.,* 49 Fed. App'x. 346 (2d Cir. 2002) in violation of the Second Circuit's rules. *See* 2d Cir. R. §0.23.[8]  "Counsel is advised to comply with our local rules in future briefing."  *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,* 307 F.3d 24, 33 n.10 (2d Cir. 2002).

## IV.  Explanation for the Delay.

As Section 3420(d) applies to Star's disclaimer, Star was required to issue a timely written disclaimer.  The burden is upon Star to justify the delay.  *See, e.g., City of New York v. St. Paul Fire and Marine Ins. Co.,* 21 A.D.3d 978, 981 (2d Dept. 2005).

The statute requires that an insurer must give written notice of disclaimer of liability or denial of coverage to the "insured" "the injured person or any other claimant"  "as soon as possible."   The "timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer."  *First Fin. Ins. Co. v. Jetco Constr. Corp.,* 1 N.Y.3d 64, 68-69 (2003) (citing *In re Allcity Ins. Co.*, 78 N.Y.2d 1054, 1056 (1991)).  In most

---

[8] At the time this motion was briefed, Rule 0.23 provided that summary orders "shall not be cited or otherwise used in unrelated cases before this or any other court."  On November 17, 2006, after the briefing of the motion at bar, the Second Circuit adopted Interim Local Rule §0.23 which permits citation to summary orders filed after January 1, 2007. Under either version of the Rule the citation to *Adams* is improper.

cases the timeliness of the insurer's disclaimer "will be a question of fact, dependent on all of the circumstances of a case that make it reasonable or unreasonable, for an insurer to investigate coverage." *Id.* at 70. "However, where the basis for disclaimer was or should have been readily apparent before the onset of the delay, any explanation by the insurer for its delay will be insufficient as a matter of law, and where the basis was not readily apparent, an unsatisfactory explanation will render the delay unreasonable as a matter of law." *Bovis Lend Lease,* 27 A.D.3d at 88 (citing *First Fin. Ins. Co. v. Jetco Constr. Corp.*, 1 N.Y.3d at 69); *accord City of New York v. St. Paul Fire and Marine Ins. Co.,* 21 A.D.3d at 981. Delays between one and two months have been held unreasonable as a matter of law. *See First Fin.,* 1 N.Y. 3d at 69-70 (48 day delay unreasonable as a matter of law where delay was not sufficiently explained by insurer's investigation into other, third party sources of insurance, the existence of which was not a factor in the insurer's decision to deny coverage); *Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028, 1030 (1979) (two month unexplained delay unreasonable as a matter of law); *West 16th St. Tenant's Corp. v. Public Serv. Mut Ins. Co.,* 290 A.D.2d 278, 279 (1st Dept. 2002) (unexplained 30 day delay in denying coverage on basis of late notice was per se reasonable); *Campos v. Sarro,* 309 A.D.2d 888, 889 (2d Dept. 2003) (39 day delay held unreasonable as a matter of law where explanation for delay after receipt of sufficient facts to disclaim was vague); *Squires v, Marini Bldrs.,* 293 A.D.2d 808, 810 (3d Dept. 2002) (delay of 42 days from receipt of complaint which alleged facts forming basis for disclaimer, per se unreasonable where insurer did not assert that it had any reason to doubt the allegations of the complaint).

In this case is it undisputed that on November 1, 2002, an employee of HEC faxed to Star's third party administrator, Gallagher, the letter from Hilton's counsel regarding the third

party complaint. It is also undisputed that in its letter of November 22, 2002 to Gainey & McKenna retaining them as counsel, Gallagher wrote, regarding Hilton's third party complaint "Hilton Hotels alleges that the contract with HEC agreed to provide Hilton a defense and Indemnification." Accordingly, the basis on which to disclaim for "liability assumed by contract" was apparent as of November 22, 2002.[9]

Star maintains, however, that because Hilton's third party complaint contained, in addition to the contractual indemnification, claims based upon common law and because Star's duty to defend is broader than its duty to indemnify, Star could have not disclaimed its indemnity obligation until HEC was required to pay damages and until it was clear that HEC's liability was based on the Hilton contract. Measured from that date, Star asserts its disclaimer was timely.

Star's argument must be rejected.[10] It is well established in New York that "an insurer which defends an action on an insured's behalf without timely disclaiming a known limitation as to coverage may be estopped from later asserting the relevant defense." *County of Sullivan, v New York,* 137 A.D.2d 165, 168 (3d Dept. 1988) (citations omitted). Such a disclaimer, may in appropriate circumstances be a partial disclaimer of liability. *See id.* at 167-68. Here, given that

---

[9]Even if in November 2002 Star had some basis on which to doubt the allegations of Hilton's third party complaint (*cf. Squires*, 293 A.D.2d at 810), any such doubt should have been resolved when Gallagher received Gainey's March 26, 2003 letter which reported that a copy of the contract between HEC and Hilton had been obtained and that Article 20 thereof provided that the "insured agrees to 'defend, indemnify and hold harmless Hilton Hotel from and against every claim, demand or cause of action . . . for personal injury . . . arising out of or in anyway incidental to or in connection with the performance of the work hereunder." Even if Gallagher's receipt of Gainey's March 23, 2003 letter is deemed "the point in time when the insurer first learns of the grounds for disclaimer," Star's disclaimer in September 2005 is, as discussed, untimely as a matter of law.

[10]Under Star's reasoning its September 2005 disclaimer is, in fact, premature because it was not until November 2005 that Hilton was granted summary judgment

by November 22, 2002 Star knew that Hilton's claims were premised at least in part on the contractual assumption of liability, Star should have issued , within a reasonable time of that date, a partial disclaimer, disclaiming liability to the extent that HEC's liability to Hilton was a liability assumed under the contract between HEC and Hilton.  It did not.

Rather, Star, by its agent Gallagher, directed the law firm (that Gallagher retained to defend HEC) to accept Hilton's tender of defense.  There is no indication on this record that either Star or Gallagher consulted with HEC prior to the instruction.[11]

At this point it is appropriate to discuss  Star's assertion that it is a mischaracterization to say that Gallagher's October 20, 2003 email was a written instruction to assume Hilton's defense. *See* Def. Mem in Opp. at p. 26 n.8.  When that e-mail is read in context, i.e. in conjunction with Gainey's August 11, 2003 letter asking Star to advise whether they will agree to defend and indemnify Hilton and Gainey's reply e-mail advising that based on Gallagher's email they had advised Hilton's counsel that they would pick up the defense,  the only reasonable conclusion to be drawn is that Star agreed to indemnify and defend Hilton and instructed Gainey to assume their defense.  That conclusion is confirmed by Gainey's April 6, 2004 letter report to Gallagher in which Gainey wrote: "At your direction we picked up the defense of Hilton Hotel. . . . We are now defending Hilton, with HEC's insurer paying the expense and any eventual settlement," as well as by the absence of any submission by Star indicating HEC had been consulted about that decision in any way or by anyone.

The affidavit of James Gallagher submitted by Star is insufficient to create a question of

---

[11]If such a communication had taken place, it would certainly be within Star's knowledge. Thus, the absence of discovery would have no affect on Star's ability to put such evidence forth on this motion.  Indeed Star does not identify this as an area that needs discovery.

fact on this issue.   The affidavit, consisting of seven paragraphs, states that Goldstein had discussions with an employee of HEC and an attorney at Gainey without specifying when the discussions took place or what was said.   Based on these discussions, the affiant then states it was his "understanding" that "HEC accepted the defense of Hilton." Continuing, the affiant states his "understanding," without specifying any basis therefore, that after HEC assumed Hilton's defense,  HEC no longer sought insurance coverage from Star but rather was seeking coverage from its general liability insurer.  Nowhere in the brief affidavit does Goldstein, who authored the October 20, 2003 email, address the email or set forth the substance of any conversation which could cause a finder of fact to view this e-mail in any other light.

Rule 56 (e) of the Federal Rules of Civil Procedure requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed.  R. Civ. P. 56(e).  Thus, where an affidavit is not based on personal knowledge, it need not be considered.  *See Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir. 1988)*; Morris v. Northrop Grumman Corp.,* 37 F. Supp. 2d 556. 568 (E.D.N.Y. 1999)*.  Also, where an affidavit contains hearsay that would not be admissible as a hearsay exception, such hearsay can be struck. *See Caldwell v. Am. Basketball Assoc.,* 825 F. Supp. 558, 572 (S.D.N.Y. 1993), *aff'd,* 66 F.3d 523 (2d Cir. 1995), *cert. denied,* 518 U.S. 1033 (1996).  Likewise, affidavits containing conclusory allegations are insufficient to defeat a motion for summary judgment.  *See Kamen v. Am. Te. & Te. Co.,* 791 F.2d 1006, 1010-11 (2d Cir. 1986); *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir. 1978).   The conclusory affidavit of Goldstein is insufficient to create an

issue of fact in this regard.[12]

Even if Star were correct that is could not disclaim "until it was clear that HEC's liability was based on contract," its September 2005 disclaimer is untimely. When Hilton's tender of defense based on the contractual provision was accepted in October 2003, it was beyond peradventure that HEC's liability was based on contract. Still, Star did not issue a written disclaimer, as it was obligated to do, until approximately twenty-three months later.

Star failed to issue a written disclaimer of coverage until September 2005. Where, as here, "the basis for disclaimer was or should have been readily apparent before the onset of the delay, any explanation by the insurer for its delay will be insufficient as a matter of law . . . ." *Bovis Lend Lease,* 27 A.D.3d at 88 (citing *First Fin. Ins.*, 1 N.Y.3d at 69); *accord City of New York v. St Paul Fire,* 21 A.D.3d at 981. Accordingly, as a matter of law, Star failed to comply with the requirement of Insurance Law § 3420(d) "to give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured . . . ."

## V. Waiver By and Estoppel of HEC

As a defense to HEC's claim that it is entitled to a declaratory judgment that Star is obligated to indemnify HEC in connection with the Matejkowski Action and Hilton's third party action against HEC therein, Star asserts that HEC has waived its right to seek coverage or, in the alternative, is estopped from seeking coverage.

Star has failed to submit evidence to support its claim of waiver and/or estoppel. As discussed above, the conclusory affidavit of James Goldstein is insufficient to create an issue of

---

[12] The absence of discovery does not change this result as Goldstein participated in these conversation and/or events,

fact.  Indeed, the only submitted document which references the April 2004 conversation between Goldstein and Sandoval is an e-mail authored by Goldstein and sent to Gainey.  *See* Ex. Y to HEC's Rule 56.1 Statement.  The e-mail does not mention any agreement or representation by HEC that it was no longer seeking coverage from Star.

In any event, Star has failed to cite to this Court any case in which an insured has either been deemed to have waived  coverage under an insurance policy or was equitably estopped from seeking coverage.  Moreover, the Court's own research has failed to reveal any such cases.  And, the New York Court of Appeals has rejected, as against public policy, purported oral agreements wherein the insured agreed to refrain from pursuing coverage under a policy.  *See Bersani v. Gen. Accident Fire & Life Assur. Corp. Ltd.,* 36 N.Y.2d 457, 460 (1975).  *Cf. Albert J. Schiff Assoc., Inc. v. Flack,* 51 N.Y.2d 692, 698 (1980)(noting how courts disfavor forfeitures of an insured's coverage); *Salzman v. Prudential Ins. Co.*, 296 N.Y. 273, 278 (1947) (noting Insurance Law is grounded in public policy and its protections may not be waived by policyholders).

The policy at issue provides "the terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy."  Given that contracts of insurance are to be liberally construed in favor of the insured, *see Albert J. Schiff Assoc.,* 51 N.Y.2d at 699, this requirement for a writing would apply to waivers by the insured.  Pursuant to § 15-301 of the New York General Obligations Law[13]*,* contractual provisions

_____

[13] The statute provides, in pertinent part:

1. A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.
2. A written agreement or other written instrument which contains a provision to the

requiring written modifications and waivers are strictly enforced. *See Towers Charter & Marine v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir. 1990). Here there is no written waiver. HEC cannot be equitable estopped from relying on the requirement for a written modification because Star has not pointed to any conduct which is unequivocally referable to the alleged modification. *See id.*

Accordingly, Star's affirmative defenses of waiver and or estoppel are insufficient as a

---

effect that it cannot be terminated orally, cannot be discharged by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the discharge is sought, or by his agent, and cannot be terminated by mutual consent unless such termination is effected by an executed accord and satisfaction other than the substitution of one executory contract for another, or is evidenced by a writing signed by the party against whom it sought to enforce the termination, or by his agent. 3. a. A discharge or partial discharge of obligations under a written agreement or other written instrument is a change of the agreement or instrument for the purpose of subdivision one of this section and is not a discharge or termination for the purpose of subdivision two, unless all executory obligations under the agreement or instrument are discharged or terminated.
b. A discharge or termination of all executory obligations under a written agreement or other written instrument is a discharge or termination for the purpose of subdivision two even though accrued obligations remaining unperformed at the date of the discharge or termination are not affected by it.
c. If a written agreement or other written instrument containing a provision that it cannot be terminated orally also provides for termination or discharge on notice by one or either party, both subdivision two and subdivision four of this section apply whether or not the agreement or other instrument states specifically that the notice must be in writing.

N.Y. Gen'l Oblig. Law §15-301.

matter of law.

### *Conclusion*

For the reasons set forth herein, HEC's motion for summary judgment 1) denying the declaratory relief requested in Star's complaint; 2) granting the declaratory relief sought in HEC's first counterclaim; and 3) granting summary judgment on liability on HEC's second and third counterclaims, is GRANTED.

**SO ORDERED**

Dated: Central Islip, New York
       January 30, 2007

/S/_____
Denis R. Hurley
Senior District Court Judge